**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAYMOND KING, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ADVANCE AMERICA, CASH ADVANCE, | : | NO. 07-237 |
| CENTERS, INC., et al. | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| SHARLENE JOHNSON, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ADVANCE AMERICA, CASH ADVANCE, | : | NO. 07-3142 |
| CENTERS, INC., et al. | : | |
| Defendants. | : | |

**MEMORANDUM REGARDING**
**ENFORCEABILITY OF CLASS-ACTION WAIVERS**

**Baylson, J.**                                                    **August 31, 2011**

**I.    Introduction**

        In these related matters, Plaintiffs entered into various "payday loan" agreements with

Defendants.  The two separate actions correspond to two separate programs Defendants offered

at different times.  Plaintiffs filed suit to recover, inter alia, damages, including allegedly illegal

usurious interest charged by Defendants and paid by Plaintiffs.  Presently before the Court are the

King Defendant's Motion to Compel Arbitration (King, ECF No. 6), the Johnson Defendants'

Motion for Stay of Judicial Proceedings Pending Arbitration or, in the Alternative, to Dismiss the

Complaint for Failure to State a Claim Upon Which Relief May Be Granted (Johnson, ECF No.

21), and the Johnson Plaintiffs' Motion to Compel Discovery (Johnson, ECF No. 76).  On

August 18, 2011, the Court entered an Order granting the King Defendant's Motion, granting in

part and denying in part the Johnson Defendants' Motion, and denying the Johnson Plaintiffs'

Motion.  (King, ECF No. 76; Johnson, ECF No. 86.)  This Memorandum will state the reasons.

## II.    Factual and Procedural Background

### A.    Relevant Factual Background

On January 18, 2007, Raymond King and Sandra Coates, on behalf of themselves and

others similarly situated (the "King Plaintiffs"), filed a class action complaint against Advance

America, Cash Advance Centers of Pennsylvania, LLC (the "King Defendant").  The King

Plaintiffs allege that the King Defendant "unlawfully charged Pennsylvania consumers in excess

of 700% annual percentage rate (APR) on short-term loans, commonly referred to as 'payday

loans.'"[1]  (King Compl., ECF No. 1, ¶ 1.)  Defendants achieve these high-interest rates by

charging a fee, of approximately $8.50 to $9.50, per $50 borrowed.  (Id. ¶ 16.)

Sharlene Johnson, Helena Love, and Bonny Bleacher, on behalf of themselves and others

similarly situated (the "Johnson Plaintiffs," together with the King Plaintiffs, "Plaintiffs"), also

filed a class action complaint against Advance America, Cash Advance Centers, Inc., Advance

America, Cash Advance Centers of Pennsylvania, LLC, and NCAS of Delaware, LLC (the

"Johnson Defendants," together with the King Defendant, "Defendants").  The Johnson Plaintiffs

allege that the Johnson Defendants offer a "predatory payday-lending program that charges

---

[1]    "Payday loans are short-term, high-interest-or-fee loans that are generally secured by a post-dated check or a debit authorization executed by the borrower and, subsequently, presented by the lender after a predetermined period, usually set at two weeks to coincide with the borrower's payday."  Pa. Dep't of Banking v. NCAS of Del., LLC, 948 A.2d 752, 754 (Pa. 2008) [NCAS I].

Pennsylvania customers a 'monthly participation fee' of $149.95 on loans of $500 or less, in addition to a monthly interest charge" of $17 to $20 per $100 borrowed  (Johnson Compl., ECF No. 1, ¶¶ 1, 19.)

Plaintiffs allege that Defendants' programs are regulated by Pennsylvania's Consumer Discount Company Act ("CDCA"), 7 Pa. Stat. §§ 6201 et seq., which allows licensed companies to offer consumers small loans at rates capped at twenty-four percent (24%).  (King Compl. ¶ 17; Johnson Compl. ¶ 25.)  Without a CDCA license, Plaintiffs assert that Pennsylvania's general usury law caps the permissible interest rate at six percent (6%).  (King Compl. ¶ 8; Johnson Compl. ¶ 24) (citing 41 Pa. Stat. § 201).  Plaintiffs allege that Defendants' programs charged effective interest rates of 400% to 700% or higher.  (King Compl. ¶ 16; Johnson Compl. ¶ 19.)

The King Plaintiffs' allegations focus on the King Defendant's earlier business model, dubbed "rent-a-bank" schemes.  Under these "schemes," the King Defendant would facilitate a loan agreement between a customer and a bank located in another state for the purpose of invoking federal interest rate preemption.  (King Compl. ¶¶ 27-28, 32.)  Each loan the King Plaintiffs entered contained an arbitration clause that waived, among other things, their right to file a class action, represent a class of litigants, and participate in a class as a member.  (Id. ¶ 48.)  The relevant portion of the arbitration provision in the King agreements provides:

> "You acknowledge and agree that by entering into this Arbitration Provision: . . . **YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US . . . ."**
>
> [A]ll disputes including any Representative Claims against us . . . shall be resolved by binding arbitration only on an individual basis with you.  THEREFORE, THE

ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION."

(Id. Exs. A, B.)

The Johnson Plaintiffs' allegations focus on the Johnson Defendants' more recent business model,[2] the "Advance America Choice-Line of Credit."  (Johnson Compl. ¶ 43.)  Under this program, the Johnson Defendants offer consumers a line of credit and charge a 5.98% APR in addition to a $149.95 monthly participation fee.  (Id. ¶ 45.)  These line-of-credit agreements also included arbitration clauses which, like those in the King matter, include class-action waivers.  (Id. ¶¶ 52, 91.)  The relevant portion of the clause for the Johnson Plaintiffs appears in the Arbitration Provision of the Revolving Credit Agreement:

"5.  NO CLASS ACTIONS OR SIMILAR PROCEEDINGS; SPECIAL FEATURES OF ARBITRATION.  If you or we elect to arbitrate a Claim,[3] neither you nor we will have the right to: (1) have a court or jury decide the Claim; (b) obtain information prior to the hearing to the same extent that you or we could in court; (c) participate in a class action in court or in arbitration, either as a class representative or class member; (d) act as a private attorney general in court or in arbitration; or (e) join or consolidate your Claim(s) with claims of any other person."

---

[2]     Defendants engaged in the prior model with BankWest, a South Dakota bank and member of the Federal Deposit Insurance Corporation ("FDIC").  According to Plaintiffs, in March 2006, BankWest ceased its operations with Defendants based on FDIC instructions and guidelines.  (Johnson Compl. ¶¶ 37-41.)

[3]     "The term 'Claim' means any legal claim, dispute, or controversy between you and us . . . that arises from or relates to this Agreement, your account, the fees we charge, the loans you obtain, our collection of amounts you owe, . . . or the validity, enforceability, or scope of this Arbitration Provision or any other part of this Agreement. . . . 'Claim' does not include . . . (b) any assertion by you that Section 5(c), (d) or (e) of this Arbitration Provision is invalid or unenforceable . . . .  The matters described in subsection (b) of the preceding sentence must be resolved by a court and not an arbitrator."  (Johnson Mot. for Partial Summ. J., ECF No. 20, Ex. 10(c) at 3, § 2.)

(Johnson Mot. for Partial Summ. J., ECF No. 20, Ex. 10(c) at 3, § 5.)

Defendants moved to compel individual arbitration based on the arbitration provisions in each case.

### B.     Pennsylvania Enforcement Action Against Defendants

According to Plaintiffs, Defendants approached the Pennsylvania Department of Banking for approval of their line-of-credit program.  (Mot. to Compel Memo., ECF No. 76-2, at 6.) Plaintiffs allege that officials advised Defendants that its programs are illegal under Pennsylvania law.  (Id. at 6 & n.3.)  Defendants nevertheless pursued their program.  (Id. at 6.)

Consequently, in 2006, the Department of Banking initiated an enforcement action against Defendants, seeking declaratory and injunctive relief against Defendants' line-of-credit arrangement.  NCAS I, 948 A.2d at 755.  The Pennsylvania Commonwealth Court concluded that the 5.98% interest rate combined with the monthly participation fee effectively charged interest at a rate exceeding the statutorily-allowed six percent  Id. at 756.  Thus, the court enjoined Defendants from continuing to offer this product.  Id.  Both the Commonwealth Court and the Pennsylvania Supreme Court declined to stay the effect of the injunction pending appeal. Id. at 756 n.4.  The Pennsylvania Supreme Court affirmed the Commonwealth Court's decision, finding that "[t]he fees and interest [Defendants] charged in relation to its payday loans aggregate in excess of six percent APR; therefore, [Defendants] violated . . . the CDCA."  Id. at 762.

In a subsequent action, the Pennsylvania Commonwealth Court declined to permit the Department of Banking to pursue claims against Defendants on behalf of individual borrowers. See Pa. Dep't of Banking v. NCAS of Del., LLC, 995 A.2d 422, 435-39 (Pa. Commw. Ct. 2010) [NCAS II].

C.      **Procedural History**

Before the transfer of these two matters to the undersigned by Order dated April 21, 2011
(King, ECF No. 61; Johnson, ECF No. 63), Judge Fullam had granted Defendants' motions to
compel arbitration in each case, but left for the arbitrator to decide whether the respective
arbitrations should proceed on a class-wide or individual basis.  (King, ECF Nos. 29, 40;
Johnson, ECF Nos. 37, 43.)  The Third Circuit reversed, holding that whether arbitration should
proceed on a class or individual basis is a question of arbitrability for the court to decide.  King v.
Advance Am., Cash Advance Ctrs. of Pa., LLC, 415 F. App'x 399, 402 (3d Cir. 2011).  The
Third Circuit vacated Judge Fullam's orders, which had the effect of reviving Defendants'
motions (see King, ECF No. 6; Johnson, ECF No. 21), and instructed this Court to consider the
validity of the class action waiver provisions, King, 415 F. App'x at 403; see Puleo v. Chase
Bank USA, N.A., 605 F.3d 172, 183 (3d Cir. 2010) (en banc) (holding enforceability of class-
action waiver is question of arbitrability for the court).[4]

The Court has entertained extensive letter briefing on this issue and held hearings on June
21, 2011 and August 17, 2011.  Plaintiffs in both cases participated in the June 21 hearing; only
the Johnson Plaintiffs participated in the August 17 hearing.  After the June 21 hearing, the Court
permitted the Johnson Plaintiffs to engage in limited discovery and set a schedule for any
discovery motions.  The King Plaintiffs did not wish to pursue additional discovery, instead
requesting updated responses in light of the passage of time.  The Johnson Plaintiffs propounded

---

[4]      The scope of this remand is also consistent with the arbitration provision at issue
in the Johnson matter.  According to that agreement, the Court, not the arbitrator, will resolve
any challenges to the enforceability of the class-action waiver provision.  (See Johnson Mot. for
Partial Summ. J. Ex. 10(c) at 3, §§ 2, 5.)

discovery requests to Defendants and subsequently filed a Motion to Compel Discovery. Other than the Johnson Plaintiffs' desire to pursue further discovery, the Court discerns no difference between the scope of the Third Circuit's remand or the legal issues in these cases.

**III.**    **Jurisdiction and Standard of Review**

This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1332(d)(2). A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment. Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009). The party opposing arbitration is given "the benefit of all reasonable doubts and inferences that may arise." Id. (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)). Before compelling a party to arbitrate pursuant to the Federal Arbitration Act ("FAA"), a court must determine that (1) there is a valid agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009).

**IV.**    **Discussion**

  **A.**    **Defendants' Motions to Compel Arbitration and Stay Judicial Proceedings**

    **1.**    **Parties' Contentions**

Plaintiffs, all together, raise several defenses to the class-waiver clause in their agreements. They argue the clauses are unconscionable under Pennsylvania law, which they contend is the appropriate substantive law to apply in this matter and applies to all contracts generally; the clauses unlawfully exculpate and immunize Defendants' allegedly wrongful conduct; the clauses are illegal means of enforcing usurious contracts; Defendants are judicially estopped from arguing against class-wide resolution; and arbitration is unnecessary because a

Pennsylvania state court judgment has preclusive effect on the merits of the dispute.

Defendants rely on the Supreme Court's decision in <u>AT&T Mobility, LLC v. Concepcion</u>, 131 S. Ct. 1740 (2011), to argue that Pennsylvania's law on the unconscionability of class-waiver provisions is preempted by the FAA and, therefore, this Court should compel arbitration. Further, they contend judicial estoppel is not appropriate because they did not take the position in state court which Plaintiffs ascribe to them and an arbitrator should decide whether the contract as a whole is illegal, not the court.

## 2.    Unconscionability and Exculpation Defenses

These defenses can be disposed of with only a brief discussion in light of the Supreme Court's decision in <u>Concepcion</u> and the Third Circuit's subsequent decision in <u>Litman v. Cellco Partnership</u> applying <u>Concepcion</u> to New Jersey law.  <u>See Litman v. Cellco P'Ship</u>, ___ F.3d ___, 2011 WL 3689015, at *3-5 (3d Cir. Aug. 24, 2011).

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 24 (1991).  The FAA is applicable to arbitration agreements that are (1) in writing and (2) part of any "contract evidencing a transaction involving commerce."  9 U.S.C § 2.  The parties do not dispute the FAA applies.

The Supreme Court succinctly stated the applicable legal principles:

"Section 2, the primary substantive provision of the Act, provides, in relevant part, as follows:

> 'A written provision in any maritime transaction or contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'

We have described this provision as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.  In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms.

The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'  This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."

Concepcion, 131 S. Ct. at 1745-46 (citations and quotations omitted).

In Concepcion, the Supreme Court concluded that a California rule invalidating unconscionable class-action waivers "interferes with arbitration.  Although the rule does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post." Id. at 1750.  "The conclusion follows that class arbitration, to the extent it is manufactured by Discover Bank[ v. Superior Court, 113 P.3d 1100 (Cal. 2005)] rather than consensual, is inconsistent with the FAA."  Concepcion, 131 S. Ct. at 1750-51.

On remand from the Supreme Court, the Third Circuit adopted a "broad and clear" understanding of Concepcion: "a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration is desirable for unrelated reasons."  Litman, 2011 WL 3689015, at *5 (quotations omitted); see also Cellco P'ship v. Litman, 131 S. Ct. 2873, 2873 (2011) (vacating Third Circuit decision and remanding for further consideration in light of Concepcion).  In light of this broad holding, the Third Circuit concluded Concepcion controls its consideration of whether the FAA similarly preempts New Jersey law on unconscionability. Litman, 2011 WL 3689015, at *4-5.  Noting that it had previously reached a contrary decision in

an earlier case because New Jersey law had taken pains to apply its rule on class-actions waivers to judicial litigation and arbitration, the Third Circuit nevertheless concluded that Concepcion mandated the court overrule its prior decision and affirm the district court's order compelling arbitration.  Id. at *2, 3 (citing Homa v. Am. Express Co., 558 F.3d 225 (3d Cir. 2009)); see also Cruz v. Cingular Wireless, LLC, ___ F.3d ___, No. 08-16080, 2011 WL 3505016, at *9 (11th Cir. Aug. 11, 2011) (adopting broad view of Concepcion and finding similar Florida rule preempted by FAA).

This Court discerns no difference between California, New Jersey, and Pennsylvania law on the matter and, therefore, concludes the FAA preempts Pennsylvania law.[5]  Accord Alfeche v. Cash Am. Int'l, Inc., No. 09-953, 2011 WL 3565078, at *5 (E.D. Pa. Aug. 12, 2011) (Shapiro, J.); see Litman, 2011 WL 3689015, at *3 n.5 (suggesting Third Circuit previously opined New Jersey rule was less likely to contravene FAA than Pennsylvania rule).  Compare Thibodeau v. Comcast Corp., 912 A.2d 874 (Pa. Super. Ct. 2006), with Muhammad v. Cnty. Bank of Rehoboth Beach, Del., 912 A.2d 88 (N.J. 2006), and Discover Bank, 113 P.3d 1100.

Plaintiffs contend their cases are distinguishable from Concepcion because they allege Defendants knowingly engaged in illegal conduct and relied on the class-waiver clauses to shield them from liability.  This argument is simply another spin on Pennsylvania's unconscionability rule under Thibodeau and, therefore, is preempted by the FAA pursuant to Concepcion. Plaintiffs raise no other challenges to the formation of the agreements, such as fraud or duress.

---

[5]     The agreements in this case include choice-of-law provisions selecting South Dakota law for the King Plaintiffs and Delaware law for the Johnson Plaintiffs.  Both sets of Plaintiffs argue, however, that pursuant to Pennsylvania choice-of-law principles, Pennsylvania law should govern the enforceability of the class waiver.  Even assuming this contention is true, the FAA preempts Pennsylvania law which would require class-wide arbitration.

### 3.     Other Defenses to Class-Waiver Clauses

Plaintiffs assert several other defenses to the class-waiver clauses at issue in these cases: the clause is an illegal mechanism to enforce a usury contract in violation of Pennsylvania law; Defendants are judicially estopped from arguing against class-wide arbitration; and arbitration is unnecessary because a Pennsylvania state court judgment has preclusive effect on the decision the arbitrator will reach.  The Court will address each argument in turn.

Plaintiffs' first alternative defense – the class-waiver clause is an illegal usury-enforcement mechanism – suffers from the same flaw Concepcion found fatal to the unconscionability and unlawful exculpation arguments under California law.  To the extent Pennsylvania courts would recognize that an arbitration clause could be an unlawful enforcement mechanism in the usury context, such a rule would derive its meaning from the fact an arbitration clause is at issue.  Therefore, the FAA would preempt its enforcement.  See Concepcion, 131 S. Ct. at 1746 (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

This Court also concludes that Defendants are not judicially estopped from arguing against class-wide resolution because Concepcion represents an intervening change in the law. Judicial estoppel is a tool designed to protect the court from parties who seek to gain advantage by litigating one theory and then subsequently seeking additional advantage by pursuing an irreconcilably inconsistent theory.  Ryan Ops. G.P v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).  It is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.  Id. at 365.  This doctrine is not intended to eliminate all inconsistencies, no matter how trivial; rather, it is designed to prevent litigants from playing fast and loose with the courts.  Id. at 358.

Plaintiffs argue Defendants should be judicially estopped because Defendants cited the instant cases to the Pennsylvania state courts to counter the Pennsylvania Department of Banking's attempt to pursue individual relief on behalf of Defendants' customers.  See NCAS II, 995 A.2d at 439 n.20.  Plaintiffs contend the Commonwealth Court relied on this representation to deny the Commonwealth's attempt to seek relief on the customers' behalf within the context of its enforcement action.  Even assuming Defendants made the representations Plaintiffs allege, which Defendants dispute, judicial estoppel is not appropriate because the Commonwealth Court predominantly relied on other grounds to deny the Department of Banking's request.  See id. at 435-39.  Further, Concepcion represents an intervening change in the law.  See Longaberger Co. v. Kolt, 586 F.3d 459, 470 (6th Cir. 2009) (collecting cases, including United States v. Vastola, 989 F.2d 1318 (3d Cir. 1993), for proposition that judicial estoppel is not appropriate when there has been an intervening change in the law).

Finally, any preclusive effect of the Pennsylvania state courts' decision that the underlying transactions between Plaintiffs and Defendants are illegal is an issue for the arbitrator. Generally, affirmative defenses, including res judicata, are considered components of the dispute and must be considered by the arbitrator, not the court.  See Interdigital Commc'ns Corp. v. Fed. Ins. Co., 308 F. App'x 593, 596 (3d Cir. 2009).  But the Third Circuit recognizes a narrow exception to this rule when the preclusive effect of a prior federal judgment is at issue.  See John Hancock Mut. Ins. Co. v. Olick, 151 F.3d 132, 139 (3d Cir. 1998); Am. Home Assurance Co. v. Popowicz, No. 03-678, 2003 WL 21652287, at *1 (E.D. Pa. May 28, 2003) (asserting Olick creates a narrow exception for judicial determination of preclusive effect of pre-existing federal judgment).  In those circumstances, the federal court has an interest in protecting the finality and

integrity of its own judgment.  Olick, 151 F.3d at 138.

In this case, Plaintiffs rely on the existence of a state court judgment to argue there is

nothing left to arbitrate and this Court should find the underlying agreements wholly illegal.[6]

Olick recognizes a narrow exception where a federal judgment exists prior to arbitration and the

Third Circuit has not yet extended that rule to pre-existing state court judgments.  Because such

an issue is generally reserved to the arbitrator, the Court declines to determine the preclusive

effect of the state court judgment.[7]  See Zurich Am. Ins. Co. v. Watts Indus., 466 F.3d 577, 581

(7th Cir. 2006) (finding that preclusive effect of state court judgment is properly left to

arbitrator); see also Alfeche, 2011 WL 3565078, at *5 (concluding that speculation regarding

how arbitrator will construe loan agreement based on prior state court determination has no

bearing on whether to compel arbitration; arguments regarding legality of contract as a whole are

for arbitrator).

For the foregoing reasons, the Court concluded that Plaintiffs entered into valid,

enforceable arbitration agreements with Defendants and waived their rights to pursue relief on a

class-wide basis.  Plaintiffs do not dispute their claims are within the scope of the arbitration

---

[6]     At the August 17 hearing in this matter, the Johnson Plaintiffs conceded they are not arguing that the Court should find the contract as a whole illegal and, as a consequence, the arbitration clause unenforceable.  They acknowledged such a position would be contrary to Supreme Court precedent.  See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) (holding illegality of entire loan agreement is issue for arbitrator, not court).  Rather, the Johnson Plaintiffs clarified that they are arguing any arbitration would be a hollow exercise in light of the state court judgment that the transactions at issue are illegal under Pennsylvania law.

[7]     Also at the August 17 hearing, the Court inquired as to whether there was any doubt the arbitrator would apply relevant precedential law, including the Pennsylvania judgment at issue.  The parties appearing at that hearing, Defendants and the Johnson Plaintiffs, expressed no doubt the arbitrator would faithfully abide by relevant precedent.

-13-

agreements.  Accordingly, the Court granted the King Defendant's Motion to Compel

Arbitration, and granted in part and denied in part the Johnson Defendants' Motion to Stay

Judicial Proceedings.[8]

**B.      Johnson Plaintiffs' Motion to Compel Discovery**

The Johnson Plaintiffs sought to compel discovery directed at whether the class-waiver

clause itself is unlawful for the foregoing reasons.  The requested discovery falls outside this

Court's role on the pending Motion to Stay Judicial Proceedings in light of <u>Concepcion</u> and

<u>Litman</u>.  Accordingly, the requested discovery is irrelevant to the Court's task on remand from

the Third Circuit.  For this reason, the Court denied without prejudice the Johnson Plaintiffs'

Motion to Compel Discovery.

**V.      Conclusion**

For the foregoing reasons, the Court granted the King Defendant's Motion to Compel

Arbitration, granted in part and denied in part the Johnson Defendants' Motion to Stay Judicial

Proceedings, and denied the Johnson Plaintiffs' Motion to Compel Discovery.  An appropriate

Order was previously entered.

BY THE COURT:

/s/ Lawrence F. Stengel for
Michael M. Baylson, U.S.D.J.

A:\Johnson - Memo re Class Waivers - draft 3.wpd

---

[8]      The Johnson Defendants also moved, in the alternative, to dismiss the Johnson
Plaintiffs' Complaint.  Rather than dismiss the Complaint, the Court stayed proceedings pending
the outcome of arbitration.